Good morning, your honors. May it please the court, Stephen Barth with the Federal Defender's Office. On behalf of Mr. Chapman, we'll be reserving a minute and a half for response. Your honors, the district court in this case and its factual findings found that in response to Officer Buchanan, Mr. Chapman did not respond. He tensed up with hands at his sides. He took a rigid stance with his inaction. He did not respond. He just stood still. He did not attempt to punch, to kick, to use profanity in any way. As Officer O'Neill testified, essentially what was happening here was in an attempt, well during the attempt by Buchanan to take down Mr. Chapman, Mr. Chapman essentially tried to remain standing. So under Ninth Circuit law, under the Ninth Circuit Model Jury Instruction 8.2, there's a definition of force. And that's important in this case because Mr. Chapman was charged with forcibly resisting, impeding, etc. It was in the charging document. It was also in the Bill of Particulars. It's in the statute. And force is defined by as follows. Well, the district court found that he did use force to stay where he was and resist being moved over to the side. That was a finding of fact. The question of the case seems to be whether in order to be found guilty of the misdemeanor, there must be an assault of some kind, which would be infliction of harm, threat of infliction of harm or something like that. Because the statute seems to read that in order to impose the misdemeanor, there has to be a simple assault. And only the other matters of use of force would result in a felony. This fellow was convicted of the misdemeanor, so he must have been convicted upon a statute which seems to require a simple assault. Isn't that your argument? So you should be arguing that to us, don't you think? Well, yes, Your Honor. And I'll have two points. You don't have too much time, Eric. I'll have two points in response to your comments. One is you're exactly right. I cite the Valerie case out of the Second Circuit, which says that simple assault applies to all of the prohibited verbs, in other words, resisting, impeding, et cetera. And then it gives a definition of a common law definition of what simple assault is. And that definition actually was recently adopted by the Ninth Circuit in the United States v. Llewellyn case. I don't think that's in my briefs, and I apologize for that. Do you have a citation for that? I do. It's 41 F3rd 695, and the actual cite is at 698. And in that case, they define simple assault in the same way that is in my brief. So willful attempt to inflict injury upon another person, in other words, an attempted battery, or in the alternative, a threat to inflict injury upon the person another, which when coupled with the present apparent ability to do so, it instills fear in the person upon which that threat is directed at. In this case, there were neither findings that Mr. Chapman attempted to inflict injury upon somebody, an attempted battery, nor was there anything in the record to suggest so. Likewise, the second prong of the simple assault definition, there was no evidence nor were there any findings by the judge that he made a threat to inflict injury, and Buchanan certainly never testified he was in any fear. I mean, the facts of this case are essentially Buchanan tried to take him down, and my client just stood there. He didn't do anything. Does the complaint charge simple assault or any kind of assault? No, Your Honor. The complaint itself doesn't use the word assault. The complaint uses the words forcibly restricting or obstruction. That's in the caption to the complaint itself. And, again, in the bill of particulars, again, reiterates forcibly obstructing. So to answer your, Your Honor, go ahead. Was your client convicted of a felony then based on the judge's findings? No. One, of course, he couldn't have been convicted because he was charged via complaint and it was a misdemeanor. The only mention of misdemeanor is in the heading, in the title. Isn't that right? In the title of the complaint? Yes. It says a misdemeanor. Violation of such and such statute, a misdemeanor. Other than that, the complaint charges a felony. Is that right? I would disagree. You mean under the facts of the complaint? Under the judge's findings and the evidence as well. Okay. I'm not trying to convict your client of a felony. Good. Good. I'm glad. I don't want him to get a felony out of this after he's got it sort of set. Yeah, he'd really like your argument. You know, I've talked about this with colleagues. No, I don't think what we have here was an undercharging. That is, they charged him with a misdemeanor when they could have charged him with a felony. The case I just cited, to your honors, Llewellyn, makes it clear that a battery, a felony, and all others, assault under 111A can be non-injurious. That is true. But it still must be intentional, offensive conduct. And here, there was no intentional, no volitional offensive conduct because my client didn't do anything. I mean, I think it's, it would be, I'll put it to you this way. I think that under the facts of the case as we have it, my client did, was guilty of something. There are regulations which govern directives, lawful directives from officers on federal land. And my client clearly didn't comply with those directives. He wasn't charged with that. That's correct. That's correct. Just as he wasn't charged with a felony. But here, I don't think under the simple assault precedent of this court, and pretty much every circuit court, was my client guilty of a misdemeanor either. And because I don't believe there was any volitional, intentional contact by my client to answer your honors' question, no, I don't believe my client would be guilty of a felony either. Better not use all your time up on that. If you have anything else you want to add. I'll reserve the balance of my time. Unless, your honors. Why don't you reserve it? You have the government to say. Thank you. Thank you. Good morning, your honors. May it please the court, Christina McCall for the United States. The defendant, Lee Chapman, was properly convicted by the district court of forcibly resisting, impeding, and obstructing a federal officer. He was never charged with assault. He was never convicted of assault. And therefore, the elements of assault are not relevant to this case. The statute, section 111, specifically lists a variety of prohibited conduct. It was clear from the inception of this case that the government never needed to prove that an assault, a forcible assault, took place. But rather, as the district court properly found, that the defendant did forcibly impede, obstruct, and oppose a federal officer. But the complaint charges a misdemeanor. And the only way you get a misdemeanor is to have a simple assault. I would agree with the court that the statute is not clearly written. The intent of Congress must have been to include these other types under a misdemeanor, unless Mr. Chapman would prefer us to go back and convict him of felony resisting. It doesn't make sense that the statute would automatically elevate resisting arrest, impeding an officer to the felony level, while allowing an assault of a certain type to remain a misdemeanor. It was a charging decision made at our office to proceed on the basis of a misdemeanor. There are other cases from other circuits that uphold misdemeanor convictions of section 111. Recently, there was a Tenth Circuit case called Aguayo-Gonzalez. Citation for that is 472F3809. That's a 2000 case that upheld a misdemeanor conviction. It's precisely the type... You don't agree with the proposition that the only way you get a misdemeanor out of this is to find a simple assault? I would agree with the court that that is one type of misdemeanor case, and that in the context of resisting, obstructing, and impeding, that it is a charging decision. We made that decision. We never sought to elevate it to a felony level, and the statute must have implicitly a misdemeanor version of something other than simple forcible assault. Otherwise, it's just it doesn't make a lot of sense. I think that's the best statement yet. What happened here doesn't make any sense. And if we go with the straight reading of the statute, someone who actually assaulted, committed simple assault against the officer, would be eligible for the misdemeanor charge. But someone like Chapman, who simply resisted, would be put in the all other cases category and could be charged with a felony subject to 8 years imprisonment. If we follow your reading of the statute. And that doesn't make, Congress couldn't have intended that. Right. The statute needs some clarification. Maybe it does, maybe it doesn't. But when you read it, it does qualify the six acts with the statement where the acts in violation of this section constitute only simple assault. It's a one year in prison. And in all other cases, it's eight years. So if it's not assault, then he should have gotten eight years in prison under your reading. Well, that seems to be, unless you read that category, the misdemeanor category to include these other types of offenses, then apparently there is an option of these other offenses being upheld as felonies. But in this case, the government chose to proceed on the basis of a misdemeanor complaint. There are a number of cases that have upheld the resisting, impeding and interfering prongs, the forcible resisting. I don't understand why the government proceeded at all. When I picked up this file and started reading it, I kind of thought it was a 1983 excessive force case. Well, we believe that there was, and the court so found, based upon the evidence in the record, the videotape, the testimony of four officers at the scene, that a forcible resisting, impeding and obstructing case did take place. The government, as explained in a number of decisions, has a strong interest in protecting its officers when they're engaged in the performance of their official duties. When there's someone who is extremely strong, causing quite a scene at the port of entry, refusing to obey any... What was the scene he was causing at the port of entry? Well, he began by allegedly cutting in line. There were a number of pedestrians who were yelling out to the security guards, hey, that man in the yellow shirt, he's cutting in line. Someone went so far as to grab the shoulder. So he was arrested for assault, misdemeanor assault, as a result of his having cut in line? That was the event that precipitated the remaining resisting, obstructing, and impeding charges. But after that, what he did was, he didn't think it was cutting in line, apparently, because the port of entry opened up, and he was walking faster than other people. But whether he was cutting in line or not cutting in line, once your officers stopped him, he did nothing. Well, actually, he did forcibly resist. He stopped? In the record, he actually did the following acts. He was described by one officer as going really stiff, struggling with his arm, tensing up, shifting his weight back, not allowing handcuffing, resisting the officer. In the course of the officer fell to the ground, he said, hit me again. At one point, one officer... Why did he say hit me again? Well, he testified that he was feeling no pain and didn't... That actually followed a whole series of other events. And so the entire course of conduct showed certainly enough force to satisfy 111. And then the charge did not include, after the government filed the bill of particulars, his acts in reaching toward a knife. Those were stricken because that was... We decided to limit the course of forcible conduct to what took place during the initial encounter with Officer Buchanan. But when you ask why did... That shouldn't even be before us, right? No, but when you ask why did the government charge this case, is it really an excessive force case? There are other factors that led to that charging decision. The Llewellyn case that Mr. Barth referred to, it actually involved spitting an active battery. That was not the type of resisting case that we see in cases such as Ramos-Godinez. That was a 19... Sorry, a 2001 case from the Ninth Circuit. The case of United States versus Jackson. Again, a Seventh Circuit case from 2002. These cases have upheld precisely the type of struggles that Mr. Chapman engaged in with respect to Officer Buchanan. So this 111 conviction should be upheld. There's ample evidence of force. He was never charged with assault. Therefore, we never had a need to establish the fact that there was no fear elicited in the record. Thank you. Thank you, Ms. McCall. Mr. Barth, you have a few minutes. Thank you, Your Honor. Very briefly about the knife. That was not charged. And there was allegations that after the baton strikes, after the macing in the face, they double handcuffed him and brought him to a cafeteria to wash out his eyes. And at that point, with his handcuffs on, allegedly he grabbed for a knife. That was never part of the trial. It seems hard to believe that after being maced and being handcuffed, he could reach for a knife. But that's not before this Court. It wasn't before the District Court, so I think it has no bearing on this argument. Secondly, the government's argument seems to turn on the idea that the noun, simple assault, only modifies the verb, the prohibited act of assault. That is, the simple assault in the punishment section only modifies assault in the 111A1, and it doesn't modify resist, obstruct, et cetera. The plain reading of the statute, I think, undermines that argument. The plain reading of the statute is where acts in violation of this section constitute only simple assault. That would suggest that all of the acts prohibited under 111A1 are modified by simple assault. And that was one of the reasons the Valerie Court in the Seventh Circuit found the way it did. Your Honor, I agree with Judge Wardlaw, of course. One of the outrageous things about this case was we felt that the escalation, at least, of physical force went beyond what was necessary. But just as a strict legal matter, I don't think he was convicted of what he was charged with. And to answer Your Honor's question again, I don't think there was offensive conduct that would have, under the Llewellyn case, that would result in, you know,
judges: Thompson, Wardlaw, Reed